See U. S. v. Pignel [Case No. 16,049]; U. S. v. Lambell [Id. 15,553]; U. S. v. Wary [Id. 16,645].

# Case No. 15,626.

## UNITED STATES v. LOT OF JEWELRY.

[13 Blatchf. 60.] [1]

Circuit Court, S. D. New York.   June 25, 1875.

VIOLATION OF CUSTOMS LAWS—FORFEITURE—STATEMENTS BY AGENT—POSSESSION.

1. S. delivered at New York, to the purser of a steamer about to sail from there to France, a package of jewelry, corded and sealed, and addressed to L. at Paris, France. An officer of the customs obtained the package from the hands of the purser, on board of the vessel, at New York, and made seizure of its contents as forfeited, for having been landed at New York, from a vessel which brought them from Havana, without a permit from the collector. Suit was brought against the diamonds, as forfeited. L. put in a claim to the goods, by S. as his agent, the claim being verified by S. At the trial, evidence was offered, on the part of the United States, of admissions made by S., after the seizure, to the effect that the goods had been left with him by L. their owner, for sale, that L. had brought them from Havana, and that S. had been unable to sell them, and was now returning them to their owner in France, but the evidence was excluded. *Held*, that the evidence was properly excluded.

2. While S. had the goods in his possession, such declarations respecting their ownership and his authority to dispose of them, were competent evidence.

3. Statements made by S. after he gave the goods to the purser, were narrative or historical.

4. Declarations by S., while in possession of the goods, in derogation of the title of L., were not competent evidence.

5. Under section 3082 of the Revised Statutes, possession of goods is not sufficient evidence to authorize conviction, until it is otherwise proved that the goods were imported contrary to law.

[Disapproved in U. S. v. A Lot of Jewelry, 59 Fed. 684.]

[Error to the district court of the United States for the Southern district of New York.]

At law.

Henry E. Tremain, Asst. U. S. Dist. Atty.
William Stanley and George S. Sedgwick, for defendant in error.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

HUNT, Circuit Justice. This is a writ of error to the district court for the Southern district of New York. The information alleges, that, on the 8th of August, 1874, the collector of the port of New York seized a package of diamonds addressed to Leon Labbe, and imported by the steamship City of Merida, as forfeited to the United States, for the reason that they were unladen from the ship within that district, without a permit from the collector. A monition was served upon Labbe as the claimant of the goods. Labbe intervened through Jules Sazerac, as his agent, who averred that Labbe was the true and lawful owner of the goods, and that Sazerac was the bailee thereof, as his agent. In his answer and plea Labbe denied that the goods had become forfeited as alleged in the information. The cause came to trial before the court and a jury. [Case unreported.] To maintain his case, the district attorney called as a witness James S. Chalker, a special agent of the treasury department, who testified, that, on the 8th of August, 1874, he saw Sazerac go into the purser's room of the steamer La Fayette, then lying in the port of New York, with a package, and soon come out without it; and that the witness, with others, then went into the purser's room and got the package from the purser, which he produced on the trial. It was a wooden box, corded and sealed, addressed "J. M. Leon Labbe, Paris, per steamer La Fayette." The witness seized the package, opened it, and found it to contain rings, brooches, lockets, &c., set with diamonds. Immediately afterwards, and on the dock, he saw Sazerac, who told him he had left the package with the purser. It was in evidence, that the La Fayette was not a recently arrived vessel, but had been some time in port, was preparing to sail for France, and on the same day did sail for France. The district attorney then put this question to the witness Chalker: "What else did Sazerac at that time say to you, in regard to the goods in suit?" This question was objected to by the claimant, was excluded by the court, and the district attorney excepted to such ruling. The district attorney further offered to prove, that, after Chalker had seized the goods, and before they had reached the seizing department of the custom house, Sazerac made admissions, to the effect that the goods had been left with him for sale by Labbe, their owner, that Labbe brought them from Havana on the City of Merida, in June, 1874, and that he, Sazerac, had been unable to sell the goods, and was now returning them to their owner in France. This offer was rejected, and the district attorney excepted. Certain other evidence was then offered, which would have tended to prove that the goods in question had been smuggled, if the evidence before excluded had been given in the case, but which without that evidence was of no value. This

evidence was excluded by the court, and the district attorney excepted.

Upon the principles of law applicable to that subject, the declarations of the agent Sazerac are not admissible to charge his principal or to affect his property. The evidence, aside from declarations or admissions, was simply this: Sazerac had the goods in his possession, and delivered them, boxed and corded, to the purser of the steamer La Fayette, then about to sail for France, directed to Leon Labbe, at Paris. While he had the goods in his possession, his declarations respecting their ownership, and his authority to dispose of them, were competent evidence. Bradley v. Spofford, 23 N. H. 444. Even then, the declarations must be limited to such matters as relate in some measure, and more or less directly, to the right of sale or the agency. If I place my horse in the hands of an agent, with directions to sell him for a sum not less than $100, his statement that he sells on my behalf, and that the price named was fixed by me, is competent evidence, and whatever inferences may be justly drawn from these facts must rest upon me. But, he would not be authorized by such agency and possession, to state that I had obtained the horse by a trespass or a theft of the property of A. B., and thereby destroy my title, and show A. B. to be the real owner of the property. Such matter has no connection with his agency. If he knows the fact of a trespass or a theft to exist, he must prove it as a witness, but he cannot, as an agent, interject it into the case, as an admission, to the injury of his principal. The general rule is, that the declarations of an agent, to be evidence, must constitute a part of the res gestæ. They must be made in the transaction of the business, and must constitute a part of it. Historical statements are not evidence. Narratives by an agent are not evidence. The declarations are evidence only upon the theory, that when and as an agent acts for his principal, he does and must speak for him. His acts would not ordinarily be intelligible if separated from his statements. But, when the business is done, and the transaction is actually closed, there is necessity neither for statements nor for acts. If the agent then chooses to talk about the matter, he talks for himself, and can properly charge no one but himself. This subject has been recently examined in the supreme court of the United States by Mr. Justice Strong, in the case of Packet Co. v. Clough, 20 Wall. [87 U. S.] 528, where the authorities are cited, and the principles I have referred to are laid down.

In the case before us, the declarations of Sazerac were all made after he had parted with the control and possession of the goods. He had delivered them to the purser to be transported to Labbe, the owner. This ended all right or claim on his part. They had, also, been seized by the custom house authorities, and were in their possession. The duties and the powers of Sazerac as an agent were at an end. Any statements thereafter made by him were narrative or historical in their nature. This was necessarily so. His agency was to sell. That was ended, first, by his own act of delivery to the purser, and, second, by the action of the revenue officers in seizing the goods. If he spoke at all, it could only be of a past transaction.

Again, if the statements had been made while he was in possession of the goods, his declarations in derogation of the title of his principal were not competent, unless there is something in the position of the parties or the goods, as affected by the revenue laws, that alters the general law on this subject. The district attorney argues that such is the fact, and that this peculiarity is to be found in the provisions of section 3082 of the Revised Statutes. It is there provided, that, "if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment or sale of such merchandise, after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited, and the offender shall be fined" or imprisoned, as specified. "Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury." To have a benefit from this statute, the district attorney must establish two facts, which have not been proved in this case. First, he must show that the goods have been "imported contrary to law;" second, that the party proceeded against had knowledge of that fact. There was no evidence of either of these facts, nor any offer of proof of them, except by the admissions of the agent. Possession of such goods (it is declared by the statute) shall be deemed evidence sufficient to authorize conviction. "Such goods" are goods which shall be proved to be smuggled. When the smuggling is proved, the possession will authorize a conviction, but not until the smuggling is proved. The possession is not to be used to establish, nor does it tend to prove, the smuggling. This section is intended to apply to a case where a party is proceeded against, and a fine of $5,000, or an imprisonment not exceeding two years, or both, is sought to be imposed upon him, for fraudulently importing merchandise, or receiving and concealing the same, knowing it to be so imported. The object and intent of the proceeding is the imposition of the fine and the

imprisonment, not the recovery of the goods. The statement that goods so imported shall be forfeited, is incidental to the main point —the imposition of the fine and imprisonment. It is by virtue of sections 3059, 3061, 3072, and other sections, that goods are seized when imported in violation of law, and the authority of section 3082 is not needed for that purpose. It is for a violation of sections 2872 and 2874, requiring a permit to land and the payment of duties, that this action is brought, and to hold the goods as forfeited to the United States. The information further alleges, that the proceeding was in violation of section 3082, and that Labbe (not Sazerac) received, concealed and held the goods. There is, however, no suggestion in the pleadings, or on the trial, that a fine could be imposed, or that imprisonment could be inflicted, and Labbe is not before the court except as a defendant in a civil suit, seeking to protect his goods. U. S. v. Sixty-Seven Packages, 17 How. [58 U. S.] 85; Stockwell v. U. S., 13 Wall. [80 U. S.] 531. In my opinion, the rules of evidence, as applicable to this suit, are not altered by the provisions of section 3082, but the case stands like other cases, and to be disposed of upon the general principles of law.

The district attorney further insists, that the evidence was admissible, for the reason that Sazerac is the agent to claim these goods, and is proved to have been their custodian, and the only custodian they are shown to have had in this country; that it does not appear that there was any limit or scope to his agency; and that all his acts and sayings must go to the jury. The court can hardly be asked to assume the agency to be more extensive than the counsel offered to prove it to be. The offer was as follows—to "prove admissions by Sazerac, that the goods had been left with him for sale by Leon Labbe, their owner, who lived in France; that Labbe brought the goods with him * * on the 17th of June, from Havana; * * that the day after he sailed for France; and that he (Sazerac) had been unable to sell the goods, and was now returning them to their owner in France." If admitted, this evidence would have tended to prove: (1) That Labbe was the owner of the goods; (2) that he brought the diamonds from Havana; (3) that he left them with Sazerac to sell for him (Labbe); (4) that Sazerac was unable to sell, and attempted to return the goods to their owner. If admitted, this evidence would have proved an agency, limited to power to sell the diamonds, and with no other power. I cannot see that the verification, by Sazerac, of Labbe's claim to the goods, by way of answer, can throw light upon the extent of his original agency, or authorize the admission of his previous declarations.

Upon the whole case, I am of the opinion that there was no error on the trial, and that the judgment must be affirmed.